## THE NEW YORK CENTRAL RAIL ROAD COMPANY *vs.* THE SARATOGA AND SCHENECTADY RAIL ROAD COMPANY.

It was stipulated in a lease that at the expiration of the term of three years from the 1st of July, 1837, or of any subsequent term of three years, the lessor, if dissatisfied with the amount of rent agreed to be paid, might give notice to the lessee of such dissatisfaction, and claim an increase; and if the claim was not adjusted, that he might make application to " the chancellor of the state of New York, for the time being," for the appointment of three appraisers to fix the amount of the rent.    One of the terms of three years expired on the last of June, 1855.    *Held* that the parties intended, by the term chancellor, in the lease, the court of chancery, and not the mere personal incumbent of the office of chancellor.    And the court of chancery having been abolished, by the constitution of 1846, and the supreme court having succeeded to all its powers and duties; *Held*, further, that the latter court was the proper tribunal to which to apply for the appointment of appraisers.

And that an order made by a justice of the court, at a special term thereof, on notice, was a valid execution of the power.

Notice of dissatisfaction having been given by the lessor, on the 22d of June, to apply to a term which was to commence at the expiration of that month; *Held* that the notice was seasonable and proper, and not having been revoked, that it remained operative at the close of the term, on the last of June.

New York Central R. R. Co. *v.* Saratoga and Schenectady R. R. Co.

*Held*, also, that a defect in the time or mode of service of the notice was an irregularity that might be waived; and that no objection having been made by the lessee, to the notice, as irregular or premature, it must be deemed to have waived all objections on that ground.

By the act of April 2, 1853, authorizing the consolidation of certain rail road companies, the interests and rights of property of the Utica and Schenectady Rail Road Company became vested in the New York Central Rail Road Company; and the latter company became the proper representative of the former, in regard to leases executed by it, and entitled to the benefit of the provisions therein contained.

The rent reserved in a lease executed by the Utica and Schenectady Rail Road Company of a part of its track, being a compensation for the use of such track, the right to it passed, as a necessary appurtenance to the ownership of the land and the superstructure upon it, to the New York Central Rail Road Company, under the act of consolidation and the agreement entered into between the several rail road companies in pursuance of it.

ON the 27th of November, 1837, the Utica and Schenectady Rail Road Company leased, during the continuance of its charter, to the above defendants, that part of the Utica and Schenectady rail road lying between Sandridge and State street in the city of Schenectady, to be used in common by the two companies, for which use the lessees were to pay a rent of $1000 a year. This rent was by the terms of the lease subject to modification, as follows, viz: at the expiration of the term of three years from the 1st of July, 1837, or of any subsequent term of three years, the lessor, if dissatisfied with the amount of 'rent, was authorized to give notice to the lessee of such dissatisfaction, and to claim an increase; and if within a month thereafter the claim was not adjusted, in writing by the parties, the lessor was to be at liberty to make application, in writing, "to the chancellor of the state of New York, for the time being," upon due notice to the lessee, for the appointment of three suitable appraisers or arbitrators to examine into the ground and circumstances of the claim, and after a full hearing to make a just award thereon, according to the justice and equity of the case.

New York Central R. R. Co. *v.* Saratoga and Schenectady R. R. Co.

Under and in pursuance of an act passed April 2, 1853, (*Laws of* 1853, *chap.* 76,) the said lessors and other rail road companies were consolidated, and organized under the name of The New York Central Rail Road Company. By the terms of this act, and of the agreement of consolidation, all the rights of the lessor, in said lease, were transferred to and vested in the plaintiff.

On the 1st of July, 1855, one of the said terms of three years was to expire. On the 12th of June next previous thereto the plaintiff's board of directors passed a resolution expressing their dissatisfaction with the rent then payable, and directing notice to be given claiming its increase for the term commencing on the said 1st of July then next, to $5000. On the 22d June aforesaid, this notice was duly served upon the defendant pursuant to the lease; and on the 31st of July thereafter Mr. Schriver, the defendant's secretary, replied by letter declining to pay such increased rent. The plaintiff thereupon applied by petition to the supreme court, at a special term thereof held by Justice GOULD, for the appointment of appraisers in pursuance of the lease. The defendant opposed this application, on these grounds, among others, viz: That the notice or claim for an increase of rent under the lease were premature and ineffectual, not having been made at the expiration of any three years from the commencement of the lease, nor at the time nor in the manner required by the lease. That Justice GOULD had no power or authority to grant the order, the same having been conferred by the agreement of the parties upon the chancellor of the state for the time being, and the said justice not having succeeded to such authority. And that the New York Central Rail Road Company was not entitled to claim against the defendant the benefit of any or either of the provisions of said lease concerning any increase of rent to be paid thereunder. The court overruled the objections, and appointed Silas Seymour, William H. Tobey and Henry H. Brigham appraisers. The appraisers met, and both parties,

by their respective counsel, appeared before them. The dedefendant's counsel presented the above objections to the authority of the appraisers, which were overruled. Testimony having been produced and counsel heard on behalf of each of the parties, the case was submitted to the appraisers, who thereupon made their award, in writing, increasing the said rent, from and after the said 1st day of July, to $2800 per annum; a copy of which was duly served upon the defendant, who refusing to pay such increased rent, the plaintiff brought this action to recover the same. Issue having been joined the action was tried, at the Albany circuit, in April, 1860, before Justice GOULD, without a jury, and judgment rendered in favor of the plaintiff for $9822.63, the amount of the three years' rent, claimed in the complaint, besides costs. From this judgment the defendant appealed to the general term.

*W. A. Beach*, for the appellant.

*O. Meads*, for the respondent. I. The service, on the 22d of June, 1855, of the notice of dissatisfaction and a claim for an increase of the rent, was a sufficient compliance with the requirements of the lease. The terms "*at* the *expiration* of three years" &c. are incapable of being literally and precisely complied with, but their real intent and object are fully answered by a notice given within eight days of the expiration of one term and the commencement of another. The word "at" is to be interpreted by the nature and circumstances of the case, and in this case it means "about or near the time of." (*See Webster's Dict. "at."*) At all events the notice was a continuing one; and any objection on account of its service was waived by Mr. Schriver's reply, of July 31, 1855.

II. All the rights of the Utica and Schenectady Rail Road Company, as the lessors in the lease, passed to and vested in the plaintiff by the act of consolidation, (*Laws of* 1853,

*chap.* 76,) and the agreement made by the companies in pursuance of it.

III. The appointment of the appraisers by the supreme court was a valid appointment, under the provisions of the lease. 1. The power given by the lease to "the chancellor of the state of New York for the time being" was, by the force and operation of the new constitution of 1846, and of the judiciary act of 1847, transferred to the supreme court; and the appointment of the appraisers by a justice of this court, at a special term thereof, was a valid execution of this power. (*Const. of* 1846, *art.* 6, §§ 3 *and* 5. *Judiciary act of* 1847, *ch.* 280, § 16; 3 *R. S. 5th ed.* 278. *Wilcox* v. *Wilcox,* 4 *Kern.* 576.) 2. The terms "chancellor of the state of New York for the time being" show that power was not limited to any particular person, but was intended to be conferred on the *functionary* who, for the time being, was entitled to exercise the functions of the office of chancellor. It was competent for the legislature to change the *name* of the office, or the *style* of the functionary, without thereby impairing or defeating the power.

IV. Even if the appointment of the appraisers had been irregular and unauthorized, it was competent for the defendants to waive such irregularity and affirm their authority; and the defendant, notwithstanding its preliminary objections, did so, by subsequently going on with the hearing before the appraisers, producing witnesses, and submitting the case. After thus taking the benefit of a hearing, they cannot be permitted to deny the authority of the tribunal to which they have voluntarily submitted. (*Leggett* v. *Finlay,* 5 *Bing.* 255. *French* v. *New,* 20 *Barb.* 481. 3 *Phil. Ev. Edw. ed.* 331.)

V. If by reason of the abolition of the office of chancellor, the appointment of the appraisers should be held to be unauthorized, then the particular mode of re-adjusting the rent, provided by the contract, having failed, it becomes the duty of this court, under its general equity powers, to provide

some other adequate mode of carrying out the contract; and the plaintiff has in his complaint prayed for such alternative relief. (*Quick* v. *Stuyvesant*, 2 *Paige*, 91. *Brown* v. *Brown*, 1 *Barb. Ch.* 217.) 1. It now appearing to the court that the proper increase of rent, to which the plaintiffs were entitled, has been ascertained by a tribunal before which the defendant has voluntarily appeared and had a full hearing, it is submitted that the amount thus ascertained may properly be adopted by the court as a fair measure of equitable redress, and be carried out and established by its judgment. 2. And if proper relief cannot otherwise be given, the court may order a reference, to determine the proper increase of rent.

*By the Court,* HOGEBOOM, J.    Three prominent objections are made to the plaintiff's recovery : 1. That Justice Gould was not the officer or functionary designated by the contract for the appointment of appraisers, and therefore had not power to make the appointment.    2. That the notice of dissatisfaction with the existing rent, and claim for increased rent, was out of time and premature.    3. That the plaintiff is not, for the purposes of this notice and claim of rent, the legitimate successor of the Utica and Schenectady Rail Road Company.

I. The officer or tribunal to whom, in case of disagreement as to the rent, application was to be made for the appointment of appraisers, was " the chancellor of the state of New York for the time being."    I am of opinion that the parties thereby intended the court of chancery, and not the mere personal incumbent of the office of chancellor, and for these reasons :

(1.) The lease was to run during the corporate existence of the defendants, which might much exceed in duration both the official career and the life of the then chancellor.

(2.) It is highly probable that during the long period when these services might be called into requisition, the parties preferred to rely upon the presumed impartiality of a

judicial officer, rather than upon any individual designated by name, however respectable and disinterested he might be, at the time of the contract.

(3.) We may reasonably presume that the parties employed the term " the chancellor of the state of New York" in the sense then well understood among professional men, and to a large extent outside of the profession, as synonymous with the "court of chancery."

(4.) The steps provided in the contract to be taken for obtaining competent and indifferent appraisers, apparently contemplate formal legal proceedings in a court of justice, by application in writing, after previous notice in writing, upon hearing both parties; and the subsequent proceedings before the appraisers closely resemble those usually had in the progress of a litigated action.

If the *court* of chancery was intended by the parties, and not the mere person temporarily filling the office of chancellor, then, the supreme court being by law and the constitution the lawful successor and recipient of the powers and duties formerly vested in the court of chancery, must also be deemed to be such, according to the provisions of the contract. This construction best satisfies the contract, accomplishes the objects intended, and preserves a perpetual and competent tribunal to answer its requirements.

If so, then Justice Gould, sitting as a court, was for the time being, the chancellor, the supreme court, the tribunal intended by the parties. As the vice chancellors could exercise the functions of the chancellor and of the court of chancery, so could one justice of the supreme court in his appropriate place and jurisdiction, represent the court. As the whole thirty-two judges were not essential to constitute the supreme court, so three were not necessary to discharge the duties appropriate (like those required in the present instance,) to the special term.

It is very true that the supreme court had no *general* jurisdiction over the subject matter of the order, and that none

such can be conferred, even by the consent of the parties. But if the court, or its members, do not refuse to exercise this power of appointment, I do not see that the parties have any right to object. It is a mere mode of selecting impartial appraisers, solemnly agreed upon by them, under seal, and effectuates their wishes and intentions. It is not establishing a new head of equity jurisdiction, by which all citizens are bound, and which it is compulsory upon the court to assume, but an appointment of arbitrators by the parties themselves, through the court as their agents and appointees, in a manner to answer the ends of justice.

I am of opinion, therefore, that there is no necessity of resorting otherwise to the equitable powers of the court to enforce this contract, so that justice shall not be denied.

2. I think the notice of dissatisfaction and claim of increased rent was regular, and conformable to the provisions of the contract. The claim was made at the expiration of one of the three years terms. The notice was given in the latter part of June, to apply to a term which was to commence at the expiration of that month. The notice was, I think, seasonable and proper. It apprised the defendant of the wish of the plaintiffs before the new term was to commence, and enabled the defendant to make timely provision for the consequences. Though given before the expiration of the term, it was not to take effect till the expiration of the term. As it was never revoked, and remained unanswered till the last of July, it must be deemed operative at the close of the term on the last of June, and must therefore be deemed good from that period. It was practically a notice at that time. It conformed, substantially, to the intention of the parties, both in substance and time. No objection was made to it as irregular or premature, but objection was made to the increase of the rent, and a desire for negotiation expressed. I think a defect in the time or mode of service of the notice was an irregularity that might be waived, and that this was a waiver. The defendants reposed upon ob-

jections to the substance of the claim, and not to its mode of presentation.

3. For the purposes of the notice and claim of rent, I think the plaintiff was the proper representative of the Utica and Schenectady Rail Road Company. By the act of consolidation the interest and rights of property of the latter company became vested in the former. (*Laws of* 1853, *ch.* 76.)

This, also, is the fair construction of the contract. If the interest of the Utica road passed by assignment, it was obviously intended—at any rate is obviously just—that the assignee and beneficial owner should have the benefit of this provision of the lease. The rent was a compensation for the use of the land and the superstructure upon it, and the right to it passed, I think, as a necessary appurtenance to the ownership of such land and superstructure; and so long as the defendant obtained under the assignee of the Utica road the benefit and use of the road, it is obviously just that such assignee should have the benefit of the rent and of the stipulation for an increased amount. The plaintiff was the real party in interest, and it was not only proper, but necessary, that the action should be brought in its name.

I think the plaintiff's claim was well founded; that the action was well tried; and that the judgment should be *affirmed*.

[ALBANY GENERAL TERM, September 2, 1861. *Wright, Gould* and *Hogeboom,* Justices.]